No. 2383.

### George Ware, Jr., v. The State.

1. ASSAULT AND BATTERY—INTENT.—To constitute assault and battery, unlawful violence must be used upon another, and such violence must be used with the intent to injure the person upon whom it is inflicted. Unaccompanied by such intent, the violence, however unlawful, does not constitute assault and battery.
2. SAME—EVIDENCE—FACT CASE—NEW TRIAL.—The intent to injure will be presumed when an injury has been inflicted, but when no injury has been inflicted no such presumption will obtain, and the intent must be proved. The proof in this case failing to show the infliction of an injury, and preponderating against the intent to inflict injury, the conviction is against the evidence, and the trial court erred in refusing a new trial.

APPEAL from the County Court of Victoria. Tried below before the Hon. R. H. Coleman, County Judge.

The conviction in this case was for an assault and battery upon the person of Sylva Ware, who was shown by the evidence to be the mother of the appellant. The penalty assessed was a fine of twenty-five dollars.

The information under which this prosecution was had was based upon a complaint filed by George Ware, Sr., the father of the accused, and the husband of the alleged injured party. The complainant was likewise the first and the principal witness for the State. His narrative discloses a domestic episode happily more picturesque and interesting than tragic in its results. The *casus belli*, it appears, was a goat. That goat, four years before the eventful day alleged in the information, was

the corporeal personal property of the defendant. The defendant, however, under the influence of a sudden generous impulse, bestowed it absolutely upon his younger brother. From that time until the day of the battle it became a tenant in common upon the premises of the witness, waxing fat and festive on the provender of the witness, and unconsciously generating and nourishing a feud that was to become an issue in field and forum between the donor on the one side and the custodians of the donee on the other.

A few days before the assault alleged in this information, the defendant asserted a proprietory claim to the goat, and bore it from the witness's house to his own. Passing the defendant's house a day or two later, the witness discovered the goat foraging on the patch of the defendant, and forthwith, acting on behalf of his son and ward, he escorted it back to the home of its youth. On the evening of that same day, the defendant, in his cart, drove to the witness's yard fence, disembarked, entered the yard, laid violent hands on the rope attached to the goat, and essayed to bear that innocent animal off *vi et armis*. To this proceeding the witness protested that the goat belonged, not to the defendant, but to his brother, and was in the care, control and custody of him, the witness. The defendant retorted that he had merely loaned the animal to his brother, and started to drag it off. Thereupon the witness seized the rope at the end remotest from the goat. Defendant at that time held the rope at a point near the goat. Witness was now reinforced by his wife and the other members of his family, who severally seized different parts of the rope, and the tug of war commenced. Witness's wife held the rope nearest the defendant. Defendant reached out his right hand and pushed the witness's wife—how hard the witness could not say—and told her to go to the house. Instead, however, of going to the house, witness's wife advanced upon the defendant's rear, when, jerking suddenly at the rope, he brought his elbow violently against his mother's breast. The tug at the rope was then resumed, when defendant, changing his tactics, produced a pocket knife and with a strong blow suddenly severed the rope. The result of this maneuver was to place witness and his entire family *hors du combat*, and, while they lay stretched on their several backs, the defendant bore off the goat in triumph.

The witnesses for the defense, corroborated by the remaining witness for the State, testified, in substance, that they saw the

defendant enter his father's yard and undertake to lead off a goat. His father, mother and other members of the family seized the rope attached to the goat, and attempted to prevent its removal by defendant. Defendant then cut the rope near where he held it. The cutting of the rope was followed by the fall of the several parties opposed to defendant, and defendant's escape with the goat. Defendant did not strike or otherwise violently use Mrs. Ware, nor did he attempt to do so.

The motion for new trial raised the questions discussed in the opinion.

*J. L. Hill*, for the appellant.

*W. L. Davidson*, Assistant Attorney General, for the State.

WILLSON, JUDGE. To constitute an assault and battery, unlawful violence must be used upon the person of another, and such violence must be used with the intent to injure the person upon whom it is inflicted. Unlawful violence unaccompanied by such intent does not constitute the offense. (Willson's Texas Crim. Laws, secs. 809, 811.) The intent to injure will be presumed when an injury has been inflicted, but when no injury has been inflicted such presumption will not prevail, and the intent must be proved. (Id., sec. 812.)

In the case before us, conceding that the defendant used unlawful violence upon the person of his mother, the alleged assaulted party, it is not shown that she was injured by such violence either physically or mentally, or that he intended to inflict any injury upon her, but on the contrary the evidence shows that he had no such intention.

In our opinion the verdict is not supported by the evidence, and the trial court erred in refusing the defendant a new trial. The judgment is reversed and the cause is remanded.

*Reversed and remanded.*